UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**DEBBRA LAWRENCE WADLEY**           :
1427 Whittier Place, N.W.            :
Washington, D.C. 20012               :
                                     :
    **Plaintiff,**     :
                                     :
vs.                                  :   Civil Action No.: _____
                                     :
                                     :   **JURY TRIAL DEMANDED**
**MANUFACTURERS AND TRADERS**        :
**TRUST COMPANY d/b/a M&T BANK**     :
Serve: Robert G. Wilmers, CEO        :
1 M&T Plaza                          :
Buffalo, NY 14240-2399               :
                                     :
    **Defendant.**     :

## COMPLAINT
### (Retaliation)

1. Plaintiff, Debbra Lawrence Wadley, brings this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e -16(c), alleging that she has been and continues to be a victim of retaliation after engaging in protected activity.

## JURISDICTION

2. This Court has jurisdiction over the subject matter of this civil action pursuant to 42 U.S.C. 2000e-16(c).  Plaintiff has fully exhausted her available administrative remedies by lodging a formal charge with the United States Equal Employment Opportunity Commission (EEOC Charge No. 570-2015-01729) within ninety (90) days of receiving her Right to Sue Letter.  A copy of the charge is attached herein.

1

## VENUE

3. Venue is proper in this judicial district as the conduct giving rise to the claim made herein occurred in the District of Columbia.

## PARTIES

4. Plaintiff, Debbra Lawrence Wadley, (hereinafter "Ms. Wadley" or "Plaintiff"), is a 52 year old, Jamaican-American female, citizen of the United States and the District of Columbia. During the period that gives rise to this litigation, she was employed as a Commercial Branch Manager with Manufacturers & Traders Trust Company ("M&T Bank"). Her office was located at 1680 K Street, N.W., Washington, D.C. 20006.

5. Defendant, M&T Bank Corporation is a United States bank holding company headquartered at One M&T Plaza, Buffalo, New York 14203. It is incorporated under the Laws of New York and has more than 500 employees nationwide.

## FACTUAL BACKGROUND

6. Plaintiff was hired by M&T Bank as a Commercial Branch Manager at its 5630 Connecticut Avenue NW. Washington, D.C. location on October 4, 2010 after spending nineteen years as a Banker at Bank of America.

7. In February of 2011, Plaintiff was transferred to 1680 K Street, NW, Washington DC (the "K Street Branch"). The K Street branch was a larger deposit base branch and training branch for new tellers and management development program ("MDP's") candidates. Plaintiff was responsible for the success of four MDPs trained at the K Street Branch.

8. Plaintiff's staff in 2011 consisted of an Assistant Branch Manager, a Relationship Banker III, a Teller Manager, two Tellers and an assigned MDP. Her responsibilities included but were not limited to: (1) generating new business prospects; (2) pitching companies with

M&T's commercial products; (3) developing and establishing new loan accounts; (4) investments accounts and other bank services while ensuring operational efficiency and profitability and leadership of staff.

9. At the time of Plaintiff's hire, Carl Hairston was the manager of the District of Columbia Business Banking Group and managed all the business bankers in the DC Metro region. The Plaintiff's direct manager was Francis Nelson. Mr. Nelson was also the regional manager for the 11 branches in the DC Metro Region as part of the Consumer Retail Banking Group.

10. Plaintiff's Branch as well as the other Branch locations were assigned annual sales goals by Mr. Nelson. Upon information and belief, each Branch's sales goal differed from the other depending upon its location and size.

11. As part of M&T's mission, an unwritten partnership agreement existed between retail branch managers and business bankers whereby business bankers were assigned and partnered with branch managers (such as Plaintiff) in fulfilling the branch managers quarterly and annual sales production goals by allocating prospects and existing client loans, deposits and business related services to each assigned/partnered branch manager.

12. The sharing and "crediting" of sales facilitated the partnership between retail branches and business bankers and enabled branch managers to reach their sales goals.

13. At the time of Plaintiff's hire in October 2010, she was assigned to partner with business banker Arya Parvizi. Mr. Parvizi also partnered with branch managers from M&T's Chevy Chase Circle and Woodley Park branches.

14. In years 2011 and 2012, Plaintiff's partnership with Arya Parvizi resulted in Plaintiff achieving her business banking production goals. As a result, she received satisfactory annual performance evaluations for both years.

15. On January 4, 2012, Plaintiff personally generated a business line of credit from an existing client in the amount of $225,000.00. Plaintiff's branch did not get credit for the sale. However, Mr. Parvizi received credit for Plaintiff's sale.

16. For 2012, Plaintiff achieved 97% of her total sales production and received a successful annual review for that year.

17. Despite this, Mr. Nelson placed Plaintiff on a corrective action for not achieving 100% of her total sales production despite being fully aware that she was not given credit for the business line of credit increase of $225,000.00 generated from the existing client.

18. Had Plaintiff received credit for the $225,000.00 procurement, she would have achieved 100% of her sales production goals.

19. Mr. Nelson failed to follow M&T's corrective action guidelines because he placed Plaintiff on a corrective action her up despite the fact that she received a successful annual review during 2012 and would have obtained 100% of her sales production goals had she been properly credited for the $225,000.00 sale.

20. Pursuant to M&T's Corrective Action Guidelines, corrective actions against branch managers are only to take place if they are rated "IN" (Needs Improvement) during their annual review or during 3 out of the last 4 sales quarters. Here, Plaintiff was rated "Fully Successful in 2012. Thus, her <u>initial</u> corrective action should have never been implemented.

21. On August 27, 2013, the same date day that she was written up, Plaintiff filed an internal complaint against M&T for its failure to follow its own corrective action guidelines. She

followed up with a written complaint stating the same on October 14, 2013.  M&T acknowledged that it received Plaintiff's internal complaint.

22. After filing her internal complaint, Defendant reduced Plaintiff's staff from eight to three and failed to replace key members of her staff that left on their own.

23. The K Street branch was the only branch in the DC Region from 2013 - 2015 to not get a replacement for a key position of the assistant manager position vacated in January 2014.

24. After filing her internal complaint, Defendant also substantially reduced the amount of business banking sales that it allocated to Plaintiff's branch so that she could successfully reach sales production goals at her K Street branch.  Instead, Defendant allotted the credits normally allocated to Plaintiff to assist branch managers at the Chevy Chase Circle and Woodley Park branches in meeting its sales goals.

25. In 2013 substantial business banking sales were credited to the Chevy Chase Circle branch managed by Jessica Faye and the Woodley Park branch managed by Jorge Juarez.

26. Throughout years 2013 – 2015, Defendant continued to allocate credits from loan sales to the other Branches to help those branch managers meet their sales goals while at the same time substantially reducing the credits given to Plaintiff to assist her in meeting her sales goals.

27. On July 28, 2015, Defendant ultimately terminated Plaintiff due to her failure to reach annual sales goals.

## COUNT I
### (Retaliation)

28. Plaintiff incorporates by reference paragraphs one through twenty-seven of this Complaint.

29. That in 2013, Plaintiff filed an internal complaint with the Defendant for its failure to give her credit for a sale that her branch made to a client in 2012.

30. That as a direct and proximate result of filing an internal complaint, Defendant, against public policy, retaliated against Plaintiff by (1) falsely writing her up for failing to meet sales goals; (2) reducing and/or failing to replace key personnel on her staff; (3) failing to fairly allocate credit for loan sales to her branch while increasing credits for other branch locations; and (4) ultimately terminating her as a result.

31. That as a direct result of Defendant's retaliation against Plaintiff, she suffered loss of back pay and incurred emotional pain and suffering.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court enter judgment in his favor and against the Defendant on the claims brought herein and provides him with the following relief:

1. Enter judgment in Plaintiff's favor and against Defendant on the retaliation claim contained in this civil action;

2. Award Plaintiff compensatory damages against Defendant to the maximum allowed under Title VII of the Civil Rights Act of 1964 (with interest).

3. Award Plaintiff back pay;

4. Award Plaintiff his costs of bringing and maintaining this civil action and including reasonable attorneys' fees, pursuant to 42 U.S.C. § 2000e-5(k);

5. Award such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

/s/ Jason C. Crump
_____

Jason C. Crump, Bar No. 465205
**SMITH GRAHAM & CRUMP, LLC**
9701 Apollo Drive, Suite 495
Largo, MD 20774
Tel. (301) 925-2001
Fax (301) 925-2540
jcrump@smithgrahamcrump.com

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all issues herein.

/s/ Jason C. Crump
_____

Jason C. Crump